**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

| | |
|---|---|
| Jennifer Fox, | : |
| | : |
| | : |
| Plaintiff, | : Civil Action No.:  4:17-cv-634-JLH |
| v. | : |
| | : |
| | : |
| ProCollect, Inc.; and DOES 1-10, inclusive, | : |
| | : |
| Defendants. | : |
| | : |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Jennifer Fox ("Plaintiff"), hereby respectfully submits this Cross-Motion for Summary Judgment and Opposition to Defendant ProCollect, Inc.'s ("ProCollect" or "Defendant") Motion for Summary Judgment.

The facts are undisputed: debt collector ProCollect called *non-debtor* Plaintiff's cellular telephone repeatedly regarding another, unrelated person's debt after being advised on multiple occasions that it was calling the wrong number and being asked to stop calling.  This conduct was in violation of the Fair Debt Collection Practices Act ("FDCPA") and the Arkansas Fair Debt Collection Practices Act ("AFDCPA").  That ProCollect repeatedly called Plaintiff despite knowing Plaintiff's number was a wrong number is not surprising given ProCollect's policies and procedures for dealing with wrong number calls.  Indeed, rather than stop calling a telephone number once advised it is a wrong number, ProCollect instead leaves it to individual collection agents to "verify" whether a third-party's wrong number claim is correct.  The problem, however, is that ProCollect does not provide its collectors with an adequate method of actually verifying who a telephone number actually belongs to.  Instead, collectors simply look at the

same materials that misidentified the owner of a telephone number in the first place and then deem the number "verified" and call it again.  This is a woefully inadequate policy and results in ProCollect repeatedly harassing and annoying non-debtors, like Plaintiff, after being explicitly told not do to so.

For the following reasons, the Court should deny ProCollect's motion for summary judgment and grant summary judgment in Plaintiff's favor.

**UNDISPUTED MATERIAL FACTS[1]**

ProCollect is a third-party debt collector that mostly collects consumer debts. (Goodhart Depo. Tr.[2] 13:1-9).  Plaintiff is an individual residing in North Little Rock, Arkansas. (Doc. No. 1 ("Compl.") ¶ 4).  Plaintiff's cellular telephone number has been 501-xxx-9182 (the "9182 Number") for more than seven years. (Fox Depo. Tr.[3] 9:21-10:4).

### a.  ProCollect called Plaintiff regarding someone else's debt

Plaintiff does not owe a debt to ProCollect. (Goodhart Depo. Tr.  29:1-4).  Nonetheless, it is undisputed that ProCollect placed repeated telephone calls to Plaintiff's 9182 Number in an attempt to collect a debt from an unrelated person (the "Debtor"). (Pl. Response to Def. Statement of Undisputed Facts Nos. 1 (undisputed that "ProCollect sought to collect an alleged debt from alleged debtor Dale Gray ("Debtor"), who provided a contact number to the Original Creditor of (501) xxx-9183"); No. 3 (undisputed that ProCollect called the 9182 Number five (5) times from July 1, 2016 to May 10, 2017); No. 7 (undisputed that on May 18, 2017 ProCollect

---

[1] Plaintiff submits her response to ProCollect's Statement of Material Facts concurrently herewith.

[2] "Goodhart Depo. Tr." refers to the deposition transcript of the November 13, 2018 deposition of ProCollect's 30(b)(6) witness, David Goodhart.  Excerpts of the Goodhart Depo. Tr. are attached hereto as Exhibit A.

[3] "Fox Depo. Tr. "refers to the deposition transcript of the November 12, 2018 deposition of Plaintiff Jennifer Fox.  Excerpts of the Fox Depo. Tr. are attached hereto as Exhibit B.

called the 9182 Number despite being advised on May 11, 2017 that the -9182 Number is a wrong number); No. 10 (undisputed that ProCollect called the 9182 Number on June 8, 2017 after being advised on May 11, 2017 and May 18, 2017 that the 9182 Number was a wrong number)).

ProCollect has yet to clearly explain how it obtained Plaintiff's 9182 Number (it did not obtain it from the original creditor (*see* Goodhart Decl.[4] at ¶ 7)).  On the one hand, ProCollect claims "[t]he telephone number that the Debtor expressly provided to the Original Creditor for contact was (501) xxx-9183" and "it appears that ProCollect mistakenly input the telephone number of (501) xxx-9182 (one digit off) into the Recovery System." (*Id.*).

On the other hand, ProCollect declares that "[p]rior to making any calls, ProCollect performed a 'skip-trace' search for contact information for the Debtor using its skip-tracing vendor" and that "[t]he TLO search, as set out in the Call Notes, shows both numbers associated with the Debtor – (501) xxx-9183 and (501) xxx-9182 . . . [a]s such, both numbers were included as possible contact numbers for the Debtor." (Goodhart Decl. at ¶ 8).

### b. ProCollect continued to call Plaintiff after being told it was calling a wrong number

It is undisputed that ProCollect continued to call Plaintiff's 9182 Number *after* Plaintiff advised ProCollect on two (2) separate occasions that it was calling the wrong number, and after ProCollect notated in its own account notes on two (2) separate occasions that the 9182 Number was a bad number:

> ➤ <u>**May 11, 2017 – first wrong number warning and notation of the same**</u>:

- "Plaintiff called ProCollect and spoke to ProCollect for the first time on May 11,

---

[4] "Goodhart Decl." refers to the Declaration of David I. Goodhart which ProCollect submits in support of its motion for summary judgment, a copy of which is available at Doc. No. 24-1.

2017 and informed ProCollect that it was calling a wrong number." (Pl. Response to Def. Statement of Undisputed Facts No. 6).

- ProCollect notated the May 11, 2017 entry in the Debtor's account notes to reflect that the 9182 Number was a wrong number. (Pl. Response to Def. Statement of Undisputed Facts No. 20).

➢ **May 18, 2017 – ProCollect calls again; Plaintiff gives second wrong number warning; second notation of the same**:

- ProCollect called the 9182 Number on May 18, 2017. (Pl. Response to Def. Statement of Undisputed Facts No. 7).

- Shortly after ProCollect's May 18, 2017 outbound call to Plaintiff, Plaintiff called ProCollect and advised it, once again, that it was calling the wrong number and asked ProCollect to stop calling. (Pl. Response to Def. Statement of Undisputed Facts No. 8).

- Following Plaintiff's second request for ProCollect to stop calling the 9182 Number on May 18, 2017, ProCollect "placed a do not call (501) xxx-9182 note in the Call Notes" (Pl. Response to Def. Statement of Undisputed Facts No. 9);

➢ **June 8, 2017 – ProCollect calls again:**

- ProCollect placed yet another outbound call to Plaintiff on June 8, 2017 despite having multiple notes in its account notes reflecting that the 9182 Number is a bad number. (Pl. Response to Def. Statement of Undisputed Facts No. 10).

### c. ProCollect's repeated calls harassed, upset and frustrated Plaintiff

Plaintiff felt harassed, upset and frustrated as a result of ProCollect's continued calls to Plaintiff's cellular telephone after she advised ProCollect it was calling a wrong number and asked it to stop calling her. (*See* Fox. Depo Tr. 32:24-33:2 ("That's harassing. If I tell you to stop

4

calling me, you have the wrong number but you're insisting on this is this person's number, that's harassing to me. It should have only took for me to say one time"); Tr. 14:5-9 ("And then I called back and was, like, 'I've told y'all you have the wrong number. That lady was, like, super rude and -- because I home school my kids, and I've told you to stop calling me. And you're still calling me.' And so I was very frustrated."); Tr. 25:5-7 ("Q. Yeah, I just want to know what you told them. A. That -- to stop calling. You have the wrong number. I was upset. I was very upset; I was frustrated.").

In addition, the calls were disruptive and interrupted Plaintiff while she was homeschooling her children. (*See* Fox. Depo Tr. 39:18-25 ("I home school my children, and I'm there with them teaching them and doing school. And to have to receive those calls, even at -- even at any time of the day if I've let you know that that person, you know, you have a wrong number and you continue to call, that's – that's frustrating for me. It's overwhelming. And especially the way that lady talked to me. She made me the maddest.")).

### d. ProCollect's policies and procedures encouraged repeated calls to known wrong numbers

ProCollect's policies and procedures were not reasonably adapted to avoid repeatedly calling known wrong numbers. In fact, ProCollect's policies and procedures encourage ProCollect collectors to continue calling a number after it is told they are bad numbers. Indeed, "ProCollect does not immediately remove the number from a single alleged wrong number allegation provided orally . . . ." (Goodhart Decl. at ¶ 3). The "first step" after ProCollect is advised it is calling a wrong number is to "move[ ] the phone number into another category called old other phone, which tells the -- any other collector that from that point forward to only make a manual phone call and don't use any other devices on which to make that phone call." (Goodhart Depo. Tr.  19:7-13). When asked "[b]ut that category doesn't stop the calls, it just

5

stops not manual calls?," Mr. Goodhart confirmed "That is correct." (Goodhart Depo. Tr. 19:14-16).

Rather than stop calling a number once advised it is a wrong number, ProCollect instead "requires verification of the number prior to any removal." (Goodhart Decl. at ¶ 3). ProCollect contends "[t]here are a variety of people that call in that allege that the number is a wrong number or it's not their debt, and so the debt collector is instructed to verify whether that's, in fact, true or not." (Goodhart Depo. Tr. 19:21-20:4). If a collector "verifies" a number "by either the Original Creditor's documents, a TLO search or other [unspecified] means . . . then a collector may call the subject number again." (*Id.; see also* Goodhart Decl. at ¶ 3 ("That verification process can include reviewing the Original Creditor's file, reviewing the Call notes, and/or searching (skip-tracing) the alleged debtor using ProCollect's vendor's search application, TLOxp")).

In other words, in the face of being told by the user of a telephone number that it is a wrong number and not the Debtor's number, rather than stop calling the number, ProCollect instructs its collectors to return to the *same sources* of information that originally misidentified the number as belonging to the debtor to somehow "verify" it, without any additional or new sources of information to confirm who the number actually belongs to. Aside from reviewing either the original creditor's documents, the Call Notes or a TLO report (i.e., the same documents that are initially used by ProCollect to obtain a debtor's telephone number to begin with), ProCollect does not identify any steps to actually verify who a number belongs to in the face of conflicting ownership information. Moreover, while ProCollect's 30(b)(6) witness agreed that the "verification" was done by "checking third-party TLO," he had "no idea" what percentage of the time numbers from TLOs are correct for the debtor and "no idea" if they're

6

always correct. (Goodhart Depo. Tr.  20:5-13).

In this case, two different unidentified ProCollect collectors incorrectly "verified" that Plaintiff's 9182 Number belonged to the Debtor *after* Plaintiff advised ProCollect that the number was in fact hers and not the Debtor's. (*See* Goodhart Decl. at ¶ 10 (On May 11, 2017 Plaintiff advised ProCollect the 9182 Number was a wrong number. "Thereafter, on May 18, 2017, a different collector . . .  after the allegation of a wrong number, verified the (501) xxx-9182 as a number associated with the Debtor with the TLO application before calling that number searching for the Debtor." Four minutes later Plaintiff called ProCollect and advised it was calling a wrong number); ¶ 11 (Thereafter, on June 8, 2017, this Account was worked by another collector . . . the collector verified the 9182 number as associated with Debtor before calling that number.")).

Incredibly, even though the referenced TLO report already misidentified the 9182 Number as belonging to the Debtor before any of the calls were placed, (Goodhart Decl. at ¶ 8), after Plaintiff advised ProCollect that the 9182 Number was hers and not the Debtor's number, ProCollect's collectors were encouraged used the same TLO source under ProCollect's policy to "verify" that the 9182 Number belonged to the Debtor, without taking any separate steps to actually determine whether the TLO report was correct or not or looking anywhere else; going back to the same wrong source over and over is not verification of any kind nor is it reasonable.

Further, under ProCollect's policies and procedures, "[i]f ProCollect is verbally told a *second or subsequent time* that they are pursuing a wrong number, the collector is required to insert that number in the 'Hot' box where important information is stored, or to remove the number altogether from the Call Notes." (Goodhart Decl. at ¶ 3) (emphasis supplied).  However, being placed in the hot box does not stop the calls either; according to Mr. Goodhart, the hot box

7

category is "not a blanket ban on calls" and a collector can continue to call a number in the hot box again. (Goodhart Depo. Tr.  22:21-23:1).  In this case, the 9182 Number was added to the hot box on May 18, 2017, (Goodhart Depo. Tr. 21:19-22), yet weeks later on June 8, 2017 ProCollect called the 9182 Number again. (Goodhart Depo. Tr.  22:2-6).

ProCollect testified that "in a perfect world maybe the final call -- the final call that was on 6/8, I think perhaps in a perfect world the debt collector having the number in the hot box may not have called." (Goodhart Depo. Tr. 33:9-13.).  But ProCollect appears to excuse this behavior not as a mistake, but as a result of different collectors working on the Debtor's account and calling Plaintiff: "But it was a different collector that we see that -- a different collector was -- picked up the account and independently wanted to verify. I mean, we're in the business of collecting debt, and so because the number still remained on the TLO report, independently verified it himself or herself." (Goodhart Depo. Tr.  33:13-21; *see also* Goodhart Decl. at ¶ 12 (the collector who called Plaintiff on June 8, 2017 was apparently "a new collector working the account and wanted independent verification from a person answering Plaintiff's number.")). Thus, according to ProCollect, it is well within its right to continue calling a wrong number an unlimited number of times after being advised that it was calling a wrong number, so long as each subsequent call is placed by a separate ProCollect collection agent (of unknown training or wherewithal)  who wants their own "independent verification" regarding the owner of the number.  Suffice to say, ProCollect is wrong and the above-described policy is ill-adapted to avoid the type of FDCPA violations at issue in this case.

## ARGUMENT

### I. Summary Judgment Standard

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material. *See Anderson, 477 U.S.* at 248.

A party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof. *Celotex*, 477 U.S. at 323-24.  The nonmoving party must then set forth specific facts showing that there is a genuine issue for trial and may not rest upon the mere allegations or denials of his pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.

### II. DEFENDANT VIOLATED THE FDCPA

#### a. *Defendant violated section 1692d and d(5)*

The FDCPA prohibits a debt collector from broadly "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, which encompasses "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).  Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern and substance of calls. *See Kuntz v. Rodenburg LLP*, 838 F.3d 923, 926 (8th Cir. 2016).

Thus, where "the volume of calls alone . . . is insufficient to give rise to liability," liability can arise where there is a showing that "the calls were accompanied by other egregious conduct giving rise to intent to annoy, abuse, or harass," such as evidence that "the defendant continues to call the plaintiff after it has been asked to stop." *Wright v. Enhanced Recovery Co., LLC*, 227 F. Supp. 3d 1207, 1213 (D. Kan. 2016); *see also Pratt v. CMRE Fin. Servs., Inc.*, 2012 WL 86957, at *3 (E.D. Mo. Jan. 11, 2012).

In this case, it is undisputed that ProCollect was repeatedly put on notice by Plaintiff that it was calling a wrong number; that ProCollect repeatedly acknowledged it was calling a wrong number and notated the same in its account notes; that Plaintiff asked ProCollect to stop calling the wrong number more than once; but that ProCollect continued to call Plaintiff's wrong number on May 18, 2017 and June 8, 2017. (Goodhart Decl. at ¶¶ 10 & 11). These calls were manually placed by ProCollect's employees who deliberately decided to place calls to a number marked wrong number, *see id.*; they were not the product of an automated dialer malfunctioning or any other mistake. This undisputed evidence that ProCollect knowingly called Plaintiff's number after Plaintiff called in to ProCollect twice and declared the number was hers and not the Debtor's, is sufficient to establish that ProCollect violated sections 1692d and d(5). *See Wright*, 227 F. Supp. 3d at 1213*; Stirling v. Genpact Servs., LLC*, 2012 WL 952310, at *5 (C.D. Cal. Mar. 19, 2012) (characterizing "calling repeatedly after the consumer asked the debt collector to stop" as "a pattern of egregious conduct" sufficient to find liability under § 1692d(5)); *Shand-Pistilli v. Prof'l Account Servs., Inc.*, 2010 WL 2978029, at *5 (E.D. Pa. July 26, 2010) ("Plaintiff alleges 'continuous calls' to her home from a telephone number owned by defendant" and "asserts further that she asked defendant to stop contacting her but defendant refused to do so." "The law is clear that under such circumstances [the Court] may infer that the calls were

made with the intent to harass or annoy.").

Further, ProCollect's actions not only had the natural consequence of harassing Plaintiff; they did in fact harass Plaintiff. (*See* Fox. Depo Tr. 32:24-33:2 ("That's harassing. If I tell you to stop calling me, you have the wrong number but you're insisting on this is this person's number, that's harassing to me. It should have only took for me to say one time"); Tr. 14:5-9 ("And then I called back and was, like, 'I've told y'all you have the wrong number. That lady was, like, super rude and -- because I home school my kids, and I've told you to stop calling me. And you're still calling me.' And so I was very frustrated."); Tr. 25:5-7 ("Q. Yeah, I just want to know what you told them. A. That -- to stop calling. You have the wrong number. I was upset. I was very upset; I was frustrated."); Tr. 39:18-25 ("I home school my children, and I'm there with them teaching them and doing school. And to have to receive those calls, even at -- even at any time of the day if I've let you know that that person, you know, you have a wrong number and you continue to call, that's – that's frustrating for me. It's overwhelming. And especially the way that lady talked to me. She made me the maddest.")).

In the face of this evidence, ProCollect argues that it did not violate the FDCPA because of the relatively low volume of calls in this case. However, it is the *pattern* of the calls in this case that evidence ProCollect's intent to annoy and harass Plaintiff, not the volume of calls. ProCollect does not explain how repeatedly calling someone who told ProCollect to stop calling would not be annoying or harassing to the called party. More obviously, any consumer getting calls from a debt collector for someone else's debt would be annoyed and harassed after *repeatedly* telling the collector they were calling the wrong person. That type of abusive behavior by over-aggressive and out of control debt collectors is exactly what the FDCPA is meant to stop.

Moreover, the cases ProCollect relies on are all inapposite.  In *Cokeley v. Midland Credit Mgmt., Inc.,* "the undisputed evidence concerning the two telephone contacts between the parties reveals that plaintiff did not ask defendant to stop calling her." *Cokeley v. Midland Credit Mgmt., Inc.*, 2014 WL 5341919, at *6 (D. Kan. Oct. 21, 2014).  That is also the case in a number of the other decisions ProCollect relies on. *See Shuler v. Ingram & Assocs.,* 441 F. App'x 712, 718 (11th Cir. 2011) ("Ingram did not violate § 1692d(5) by calling Mr. Shuler after Mr. Shuler had told Ingram not to do so.  As the record shows, Mr. Shuler effectively nullified this prior instruction when he subsequently called Ingram to speak about the debt, thereby giving Ingram a reasonable basis to call him again."); *Guajardo v. GC Servs., LP*, 2009 WL 3715603 (S.D. Tex. Nov. 3, 2009); (no allegations that defendant called after being asked to stop calling); *Sutton v. New Century Fin. Servs.*, 2006 WL 2038500 (D.N.J. July 19, 2006) (same); *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F. Supp. 2d 795, 799 (D. Minn. 2009) (same).  Unlike each of those cases, here ProCollect called Plaintiff after being advised on two separate occasions that it was calling a wrong number.

Further, in *Reddin v. Rash Curtis & Assocs.*, the defendant called plaintiff the same day she asked it to stop calling her, however in that case while the defendant removed the number from its system, the number had already been loaded in the defendant's automated dialer for the day and the dialer "did not update its system to remove plaintiff's number until that night." *Reddin v. Rash Curtis & Assocs.*, 2016 WL 3743148, at *1 (E.D. Cal. July 13, 2016).  In granting summary judgment for the defendant, the Court noted that "the undisputed evidence is that defendant removed plaintiff's number from its file after she requested it to cease calling her and the second call was inadvertently placed before the automated dialer system was updated that night. Based on this evidence, a reasonable jury could not find that defendant placed the

second phone call 'with intent to annoy, abuse, or harass.'" *Id.* at *3. But unlike *Reddin,* nothing in this case was inadvertent or a mistake; the calls were a product of ProCollect collectors deliberately deciding to call Plaintiff despite notations that Plaintiff's number was a wrong number. In addition, the calls were placed weeks after Plaintiff's do-not-call requests, not later the same day like in *Reddin*.

For the foregoing reasons, the undisputed evidence in this case establishes that ProCollect engaged in conduct which had the natural consequence of harassing, oppressing and abusing Plaintiff in violation of 15 U.S.C. § 1692d and that ProCollect caused Plaintiff's telephone to ring repeatedly and continuously with the intent to annoy, abuse and harass plaintiff in violation of 15 U.S.C. § 1692d(5). Accordingly, Plaintiff respectfully requests that the Court deny ProCollect's motion for summary judgment and enter summary judgment in Plaintiff's favor.

### b. Defendant violated section 1692f

For similar reasons, ProCollect additionally violated 15 U.S.C. § 1692f, which broadly prohibits ProCollect from using "unfair or unconscionable means to collect or attempt to collect any debt." ProCollect's intentional and deliberate decision to repeatedly call Plaintiff's 9182 Number in an attempt to collect a debt from the Debtor after having being fully informed that the number did not belong to the Debtor, was plainly an unfair and unconscionable means to attempt to collect a debt.

ProCollect cites *Baker v. Allstate Fin. Servs., Inc.*, for the proposition that "Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA." *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008). Here, while section 1692d and d(5) address the conduct at issue in this – calling a number repeatedly with the intent to annoy and harass – if the Court were to find that ProCollect's conduct falls outside the scope of 1692d and

d(5), it should hold that the conduct violates section 1692f.

### III.    PROCOLLECT VIOLATED THE AFDCPA

For the same reasons that ProCollect violated sections 1692d, d(5) and f of the FDCPA, ProCollect also violated sections 17-24-505(a) and b(5) of the AFDCPA, which, like section 1692d, prohibit engaging "in a conduct the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt," A.C.A. § 17-24-505(a), and "Causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass a person at the called number." A.C.A. § 17-24-505b(5). Courts have acknowledged that the FDCPA and AFDCPA largely mirror one another and thus can be treated the same. *See In re Humes*, 468 B.R. 346, 353 n.4 (Bankr. E.D. Ark. 2011) ("For all purposes relevant to the determination of this matter, the provisions of the FDCPA and the AFDCPA are identical. Thus, the Court's rulings on the Motion for Summary Judgment with regard to the Plaintiff's FDCPA claims apply equally to the Plaintiff's corollary AFDCPA claims.").

### IV.    PLAINTIFF SUFFERED DAMAGES

Without explanation, ProCollect asserts that "Plaintiff has not produced any evidence of actual damages." (Doc. No. 26 at p. 7). To the contrary, Plaintiff repeatedly testified during her deposition that she felt harassed, frustrated and angered by ProCollect's conduct. (*See* Fox. Depo Tr. 32:24-33:2 ("That's harassing. If I tell you to stop calling me, you have the wrong number but you're insisting on this is this person's number, that's harassing to me. It should have only took for me to say one time"); Tr. 14:5-9 ("And then I called back and was, like, 'I've told y'all you have the wrong number. That lady was, like, super rude and -- because I home school my kids, and I've told you to stop calling me. And you're still calling me.' And so I was very

14

frustrated."); Tr. 25:5-7 ("Q. Yeah, I just want to know what you told them. A. That -- to stop calling. You have the wrong number. I was upset. I was very upset; I was frustrated."); Tr. 39:18-25 ("I home school my children, and I'm there with them teaching them and doing school. And to have to receive those calls, even at -- even at any time of the day if I've let you know that that person, you know, you have a wrong number and you continue to call, that's -- that's frustrating for me. It's overwhelming. And especially the way that lady talked to me. She made me the maddest.")).   This testimony is more than sufficient to show Plaintiff suffered actual damages. *See Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1041 (D. Minn. 2010), *aff'd,* 413 F. App'x 925 (8th Cir. 2011) ("The FDCPA authorizes recovery of '*any* actual damage' sustained by a consumer as a result of a debt collector's violation of the Act. 15 U.S.C. § 1692k(a)(1) (emphasis added). A consumer who has suffered emotional distress has suffered 'actual damage,' even if the emotional distress was not severe.").

## V.    DEFENDANT IS NOT ENTITLED TO A BONA FIDE ERROR DEFENSE

The "'bona fide error defense' offers debt collectors 'a narrow exception to the strict liability imposed by the FDCPA.'" *Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173, 1177 n.2 (D. Minn. 2011) (internal citations and quotation marks omitted).   It is "an affirmative defense on which the debt collector bears the burden of proof." *Litt v. Portfolio Recovery Assocs. LLC*, 146 F. Supp. 3d 857, 875 (E.D. Mich. 2015).   To take advantage of it, a debt collector-defendant must show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009) ("To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional;

15

(2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error.") (internal citations and quotation marks omitted).

Here, ProCollect seeks to take advantage of the bona fide error defense. (Doc. No. 26 at pp. 7-9). However, it cannot as a matter of law because (1) it has failed to establish that its violations of the FDCPA were unintentional; (2) it has failed to establish that its violation was the result of a bona fide error; and (3) ProCollect has failed to establish that it maintained policies and procedures reasonably adapted to avoid placing repeated calls to a non-debtor's number after being advised that the number was a wrong number.

### a. ProCollect's violations were intentional

These calls were no mistake; ProCollect called Plaintiff's 9182 Number in an attempt to collect a debt from the Debtor after having being fully informed one two separate occasions that the number did not belong to the Debtor.

ProCollect argues in a conclusory fashion that it "did not intentionally, with the intent to harass, oppress or annoy, call an unwanted number." (Doc. No. 26 at p. 8). According to ProCollect, it "simply sought to connect to the debtor through a number associated with the debtor pursuant to its skip-tracing application, and thereafter, verify the allegation of a wrong number." *Id.* First, this is beside the point as intent for a bona fide error goes to whether or not the debt collector mistakenly engaged in conduct which violated the FDCPA. *See Montgomery v. Shermeta, Adams & Von Allmen, P.C.*, 885 F. Supp. 2d 849, 857 (W.D. Mich. 2012) ("The first element of the bona fide error defense is a subjective test that assesses the credibility of the debt collector's assertions that the FDCPA violation was not intentional."). To be clear, ProCollect does not argue that it was a mistake that its collectors called Plaintiff's number after being

advised it was a wrong number.  (*See* Doc. No. 26 at p. 8; *see also* Goodhart Depo. Tr. 32:4-10 ("I don't believe necessarily that a mistake was made.")).  Instead, it claims it *intentionally* called Plaintiff's number after being asked not to do so (the conduct that violated the FDCPA).  Second, while ProCollect now claims it did not mean to annoy, oppress of harass Plaintiff, it provides *no evidence* from the actual collectors showing *they* did not act intentionally; Defendant's outside general counsel, Mr. Goodhart, has no idea what individual unidentified collectors intended to do.  As noted above, "[i]ntent may be inferred by evidence that the debt collector continued to call after being asked not to call," *Pratt*, 2012 WL 86957, at *3, and ProCollect does not explain why its repeated calls to a wrong number would not annoy or harass someone who has already told the caller to stop calling.[5]

*Litt v. Portfolio Recovery Assocs. LLC* is instructive.  In that case, as here, collectors continued to call a phone number after learning it was a third-party wrong number. *Litt v. Portfolio Recovery Assocs. LLC*, 146 F. Supp. 3d 857, 876 (E.D. Mich. 2015).  In denying the defendant's motion for summary judgment regarding the bona fide error defense, the court noted that "[t]he burden is on [the debt collector-defendant] to establish each of the elements of the bona fide error defense by a preponderance of the evidence" and the defendant in that case, like ProCollect here, failed to even identify which collectors called plaintiff's number "after their own records established that it was a wrong number . . . let alone establish that the collectors' 'error' in doing so was unintentional under § 1692k(c)." *Id.*  Finding that it would be pure speculation to conclude that the collectors did not act intentionally, the court found the defendant

---

[5] Further, to the extent ProCollect suggests it is entitled to the bona fide error defense because it did not intend to violate the FDCPA, this argument must fail because "'not intentional' covers only a defendant who did not intend to commit the act that violated the FDCPA," not a defendant who merely did not intend to violate the FDCPA. *Allen v. Checkredi of Kentucky, LLC*, 2010 WL 4791947, at *10 (E.D. Ky. Nov. 17, 2010).

failed to satisfy its burden of showing it was entitled to the bona fide error defense. *Id.*

So too, here ProCollect has utterly failed to establish its violations were not intentional. ProCollect does not identify by name which collectors called Plaintiff, nor does it provide any testimony from them regarding their decisions to continue to call Plaintiff despite her number being marked a "wrong number." Instead, ProCollect relies entirely on a declaration by its outside general counsel to assert in a conclusory fashion that ProCollect did not intend to annoy or harass Plaintiff. This is insufficient to satisfy ProCollect's burden of showing it is entitled to the bona fide error defense. *See id.*

### b. ProCollect's violation was not the result of a bona fide error

Second, ProCollect is not entitled to the bona fide error defense because it does not contend that its collectors committed any error or mistake when they called Plaintiff after being advised the 9182 Number was a wrong number. Indeed, when asked "do you think the calls at issue in this case to Ms. Fox were the result of a bona fide error," ProCollect's 30(b)(6) witness and outside general counsel answered "I don't believe necessarily that a mistake was made. However, if a mistake was made, it would fall under the bona fide error defense." (Goodhart Depo. Tr. 32:4-10). Likewise, in its motion for summary judgment, ProCollect does not claim that its collectors mistakenly called Plaintiff or were not following proper policies and procedures; instead, it asserts "ProCollect simply sought to connect to the debtor through a number associated with the debtor pursuant to its skip-tracing application, and thereafter, verify the allegation of a wrong number." (Doc. No. 26 at p. 8). Only in a conclusory fashion does it claim that ProCollect's actions "were not done intentionally and resulted from a bona fide error . . . ." (Doc. No. 26 at p. 9). In other words, ProCollect is arguing that its actions were proper, not that a mistake was made notwithstanding adequate policies and procedures to avoid such a

18

mistake.  Because ProCollect has not established the second element (that any violation was a result of a bona fide error), it is not entitled to the bona fide error defense.

### c.   ProCollect does not have any procedures reasaonably adapted to avoid the error which occurred here

Finally, ProCollect is not entitled to the bona fide error defense because its policies and procedures – if they exist at all – are not reasonably adapted to avoid violating the FDCPA by calling a non-debtor repeatedly after being advised their number is a "wrong number."[6]  As set forth below, at each stage of ProCollect's collection efforts it lacks sufficient policies and procedures to avoid harassing non-debtors.

First, to the extent ProCollect claims that it believed the 9182 Number was the Debtor's number because "it appears that ProCollect mistakenly input the telephone number of (501) xxx-9182 (one digit off) into the Recovery System," (Goodhart Decl. at ¶ 7), ProCollect has failed to identify *any* policy (reasonably adapted or otherwise) to ensure that consumer information is input into its system correctly.  If, as ProCollect suggests, its employees manually input consumer contact information into ProCollect's system, it should have a policy to double-check that such information is correct.  It does not.

Second, to the extent ProCollect obtained the 9182 Number via a "TLO search", (*see* Goodhart Decl. at ¶ 8), ProCollect's reliance on its TLO service has proven to be unreliable as its vendor repeatedly misidentified the 9182 Number as belonging to the Debtor rather than Plaintiff.  ProCollect has not identified any policy or procedure for verifying whether a number listed on a TLO report is accurate and ProCollect admits it has "no idea" what percentage of the time numbers from TLOs are correct for the debtor and "no idea" if they're always correct.

---

[6] ProCollect has not produced a written copy of any of its policies and procedures regarding oral requests to stop calling; its 30(b)(6) witness – and outside general counsel – has not seen the written policies and merely contends it is possible they exist. (Goodhart Depo. Tr.  30:21-31:3).

(Goodhart Depo. Tr.  20:5-13).  Given ProCollect's lack of knowledge or evidence regarding the reports' accuracy, and failure to have any policy regarding the same, the suggestion that reliance on the report is reasonable is woefully unsupported.

Third, ProCollect's policies and procedures regarding verbal notifications of a wrong number are inadequate because they do not distinguish between instances where a recipient of ProCollect's outbound calls answers the phone and states 'wrong number' and instances where someone places an inbound call to ProCollect for the specific purpose of notifying ProCollect that it is calling a wrong number. (*See* Goodhart Decl.).  This is significant because common sense dictates that a debtor who is attempting to avoid contact with ProCollect is unlikely to go out of their way to affirmatively call in to ProCollect just to say it has a wrong number.  It is substantially more likely that a person placing such a call *to* ProCollect is an actual third-party correctly advising ProCollect that it has been calling a wrong number. *See Lavigne v. First Cmty. Bancshares, Inc.*, 2018 WL 2694457, at *8 (D.N.M. June 5, 2018) ("Defendants' assertion that *non-customers called in* for some reason other than notifying Defendants that they were calling the wrong person defies common sense.").  By not distinguishing between these two groups, ProCollect's policies and procedures result in ProCollect repeatedly calling actual wrong numbers over non-debtors' objections.

Fourth, ProCollect's policy and procedures are inadequate because they *encourage* collectors to continue to call a number after being told it is a wrong number, rather than mandate that collectors actually follow the non-debtors' request and cease calling the wrong number. (Goodhart Depo. Tr. 19:7-16).  Indeed, the entire premise of ProCollect's policies and procedures – that wrong number notifications cannot be trusted and must be independently "verified" – is horribly adapted to avoid repeated calls to a known wrong number.  A reasonable

policy would be to simply not place another call to a number once informed that it is a wrong number.  Such a policy acknowledges that a debt collector does not have an absolute right to call whatever number they choose. Moreover, such a policy would not prohibit ProCollect from ceasing all communications with a debtor; ProCollect would still be entitled to email or a send a letter to a debtor, or call a different telephone number that has not been marked a "wrong number," or file a lawsuit.  By failing to mandate that its collectors take the first and easiest step of simply ceasing calls to a known wrong number, ProCollect's policies and procedures are inadequate.

Fifth and most damning, ProCollect's policies and procedures of "verifying" a wrong number notice are completely inadequate to actual verify a wrong number was called.  Here, "[p]rior to making any calls" ProCollect used TLO skip tracing which said the 9182 Number belonged to the Debtor. (Goodhart Decl. at ¶ 8).  After Plaintiff told it to stop and that it was calling the wrong number, ProCollect "verified" the number by going *back to the same TLO source.* (Goodhart Decl. at ¶ 10).  After Plaintiff told it a second time it was calling the wrong number, ProCollect again went *back to the same TLO source* to conduct its verification and then called again. (Doc. No. 24-2 (Account Notes) at pp. 9-10; Goodhart Decl. at ¶ 11).  Putting aside that ProCollect never should have called Plaintiff again after Plaintiff's first May 11, 2017 request and that independently verifying a wrong number claim is improper, even if it was proper, relying on the same incorrect information to perform a verification is just bad policy. It is not verifying anything, it is merely confirming that your original wrong source is still wrong, and doing the same thing again and again and expecting a different result is not a reasonably adapted

21

procedure but is instead a species of insanity.[7]  An actual reasonable procedure would entail (1) stopping all calls to the wrong number; (2) going to different sources to confirm contact information; (3) calling other numbers until you reached the person you wanted to speak with; and/or (4) sending letters instead.  But ProCollect does no such things, its procedure in no way would "verify" that it was calling the wrong number and is instead an excuse for continuing to call the wrong number.

Finally, ProCollect's policies regarding its 'hot box' are not reasonably adapted to avoid violations of the FDCPA.  The hot box is designed for instances where ProCollect has been "told a second or subsequent time that they are pursuing a wrong number." (Goodhart Decl. at ¶ 3). As an initial matter, the mere existence of a 'hot box' is evidence of ProCollect's poor policies; once ProCollect is told for the *first time* that a number is a wrong number, the number should be completely removed from ProCollect's system and ProCollect collectors should not be able to call that number until they have some credible reason (absent here) to call it again.  Regardless, any reasonable policy regarding the 'hot box' must require that collectors be prohibited from calling a number in the 'hot box,' i.e., a number that has already been identified as a wrong number more than once.  But ProCollect has no such policy: it permits collectors to continue calling number in the hot box. (Goodhart Depo. Tr.  22:21-23:1 (the hot box category is "not a blanket ban on calls" and a collector can continue to call a number in the hot box again.).  In this case Plaintiff's number was placed in the hot box after she told ProCollect a second time it was a wrong number, yet ProCollect called it again weeks later. (Goodhart Decl. at ¶ 11).  That a collector was able to do so establishes ProCollect did not have sufficient policies and procedures

---

[7] More likely ProCollect and its collectors simply did not care about the possibility that it was calling and harassing non-debtors and instead was looking for ever more numbers to reach the person who owed it money.  Thus, ProCollect and its collectors are not insane just callous.

in place.

Because ProCollect's actions were intentional and not the result of a bona fide error, and because ProCollect has failed to show by a preponderance of the evidence that it has policies and procedures reasonably adapted to avoid the violations at issue in this case, ProCollect's bona fide error defense fails.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment and grant summary judgment in Plaintiff's favor.

Dated: January 4, 2019                              Plaintiff Jennifer Fox

By:     */s/ Sergei Lemberg*
        Sergei Lemberg, Esq.
        Bar No.: 425027
        LEMBERG LAW, LLC
        43 Danbury Road
        Wilton, CT 06897
        Email: slemberg@lemberglaw.com
        Telephone: (203) 653-2250
        Facsimile:  (203) 653-3424
        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, a true and correct copy of the foregoing was served electronically by the U.S. District Court for the Eastern District of Arkansas Electronic Document Filing System (ECF) and that the document is available on the ECF system.


_/s/ Sergei Lemberg_
Sergei Lemberg, Esq.