# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

WESTERN DIVISION

JENNIFER FOX                          *
                                      *
VS.                                   *NO. 4:17-CV-634-JLH
                                      *
PROCOLLECT, INC.; AND DOES   *
1-10, INCLUSIVE              *

------------------------------
ORAL DEPOSITION OF
DAVID GOODHART
AS 30(B)(6) WITNESS OF
PROCOLLECT
NOVEMBER 13, 2018
------------------------------

        ANSWERS AND DEPOSITION OF DAVID GOODHART,

a witness produced at the instance of the

Plaintiff, taken in the above styled and

numbered cause, on the 13th day of November,

2018 from 10:20 a.m. to 11:15 a.m., before Gail

Spurgeon, a Certified Court Reporter in and for

the State of Texas, at the offices of Bowdich &

Associates, 10440 N. Central Expressway, Suite

1540, City of Dallas, County of Dallas, and

State of Texas, pursuant to the Federal Rules of

Civil Procedure.

Q.   And what would you describe ProCollect's business as?

A.   They are third-party debt collectors.

Q.   And to your knowledge, do they have any other business, aside from debt collection?

A.   I don't believe so.

Q.   And what kind of debts do they collect?

A.   Mostly consumer debts.

Q.   Does ProCollect make its own collection calls?

A.   Yes.

Q.   Do they outsource any calls, or they make all their own calls?

A.   They make all their own calls.

MR. BOWDICH:  And, Jenny, please be somewhat careful.  I'm letting you get some background information, but you're going outside the areas of inquiry.

MS. DEFRANCISCO:  I'm pretty much done, so --

MR. BOWDICH:  Thanks.

MS. DEFRANCISCO:  -- good timing on that.

follow when someone verbally calls in and asks that -- and alleges that there's a wrong number.

Q.   What's the first step?

A.   The first step was performed earlier, on 5/11.

Q.   And what is that first step?

A.   The first step is the -- was the collector moved the phone number into another category called old other phone, which tells the -- any other collector that from that point forward to only make a manual phone call and don't use any other devices on which to make that phone call.

Q.   Okay.  But that category doesn't stop the calls, it just stops not manual calls?

A.   That is correct.  It also puts the collector on notice to verify whether that number is associated with a debtor or not, before making any other calls, and if that call is to be made, that it be done manually.

Q.   Why not just put it in the hot box category if someone calls and says it's a wrong number?  What would be the reason to have a step before that?

A.   There are a variety of people that

call in that allege that the number is a wrong number or it's not their debt, and so the debt collector is instructed to verify whether that's, in fact, true or not.

Q.   Okay.  And here, the way it was verified was by checking the third-party TLO?

A.   That is correct.

Q.   Do you know what percentage of the time numbers from TLOs are correct for the debtor?

A.   I have no idea.

Q.   But they're not always correct?

A.   I have no idea.

Q.   So here on Exhibit 2, the rental application, the phone number provided by Mr. Gray ends in 9183, right?

A.   That is what the document purports, yes.

Q.   And so the 9182 number is not the number that Mr. Gray provided?

A.   I don't believe so.

Q.   And so that number was, instead, obtained from a TLO?

A.   I can't answer that for certain.

Q.   But it stands to reason, based on

these notes that say "Per TLO"?

A.    I think you're asking two different things.

Q.    Okay.

A.    You're asking for -- I'm sorry.

Q.    Let me see if I can --

A.    Yeah.

Q.    -- clarify that for you.  So on this 007 page, the entry on 5/18 at 9:33 a.m., the second line of the note says, "Per TLO," and then below that, is the 9182 number.  So does that show that that number was verified by looking at the TLO?

A.    That tells me that the collector interpreted that information as that number belonging to the debtor.

Q.    And is that why it was called again?

A.    I believe so.

Q.    And so on 5/18 at 9:42 a.m., the 9182 number is then put into the hot box category?

A.    That is what the call note states, yes.

Q.    Okay.  And so on the following page, on 6/8/2017 at 12:41 p.m. --

A.    I'm sorry, where are we?

Q.    On Page 009.

So there's one entry here that's unredacted, 6/8/2017.  And here, there appears to be another call to the 9182 number; is that right?

A.    Yes, ma'am.

Q.    And why would that number have been called if it was in the hot box category?

A.    It's possible -- it's possible that the collector at that time independently wanted to verify that, in fact, that was the wrong number, and called.

Q.    And is that the procedure?

A.    It can be the procedure if, under the circumstances -- you have to look at the totality of the circumstances, and it's possible that -- for a collector to independently look and review the TLO report, and, although it's in the hot box, to independently call, just to verify that it is a wrong number.

Q.    So the hot box category isn't a blanket ban on calls?

A.    It's not a blanket ban on calls.

Q.    And so a collector can, under the procedure set, call the number again to verify?

A.   Under certain circumstances.

Q.   Do you know if those circumstances were present here?

A.   I wasn't there at that time, but it appears as if there is some uncertainty about the link between the 9182 number and the debtor, given the fact that it's on the TLO report. It's not unusual to independently verify one more time that the number is a wrong number. It's not unusual.

Q.   So on the last page of this exhibit, which is 010, there's two entries on 6/8/2017, and the second one, at 12:54 p.m., does that show that there was another call placed saying that the number was wrong?

MR. BOWDICH:  I'm sorry, Jenny.  Could you repeat your question?

MS. DEFRANCISCO:  Yeah. To be honest, that doesn't make sense in my own head.

A.   Yeah.

Q    (BY MS. DEFRANCISCO)  What does this entry show?  Let's just start with that.

A.   It looks like the -- it looks like

Q    (BY MS. DEFRANCISCO)  So the Plaintiff in this case, Jennifer Fox, she doesn't owe the debt, correct?

A.   I don't believe so.

Q.   And based on Exhibit 2, the debt in this case is related to some sort of an apartment bill?

A.   I believe that is correct.

Q.   And it looks like that's a residential apartment, based on the application?

MR. BOWDICH:  Objection, form.

A.   As opposed to a commercial apartment?

Q    (BY MS. DEFRANCISCO)  Yes.

MR. BOWDICH:  Objection, form.

Again, it's the same instruction.  If you know, you can answer.

A.   I don't know.

Q    (BY MS. DEFRANCISCO)  But the application says "rental application for residents and occupants," correct?

A.   Yes, ma'am.

Q.   So to your knowledge, the collector

who took the first wrong-number call on 5/11 --
that's the one we talked about before -- it
looks like that's the first time that someone
called in and said it was a wrong number.  So to
your knowledge, the collector who took that
wrong-number call followed procedure?

A.   Yes, ma'am.

Q.   Should that collector have done
anything different?

A.   I don't believe so.

Q.   Do you think anything could have been
done differently here to avoid multiple calls to
what we now know was a wrong number?

A.   I don't believe so.

Q.   Does ProCollect have any other
policies or procedures regarding an oral notice
of a wrong number that we haven't gone over?

A.   No, ma'am.

Q.   Are any of these policies written?

A.   It's possible.

Q.   To your knowledge, are there any
written policies related to oral notice of --

A.   It's possible.

Q.   Have you seen those policies?

A.   Not in preparation of this

deposition.

Q.   But it's possible they exist?

A.   Yes, ma'am.

Q.   Are you familiar with the FDCPA's bona fide error defense?

A.   Yes, ma'am.

Q.   Can you tell me in your own words what that is?

MR. BOWDICH:  Again, we're going outside the areas of inquiry, but I think it's close enough.

MS. DEFRANCISCO:  I'm pretty sure one of my topics is about --

A.   I didn't see it.

MR. BOWDICH:  I know you haven't prepared for this, and perhaps your answer would change, but I think that's something that she can ask and you can answer.

Q   (BY MS. DEFRANCISCO)  Yeah, if you know.

A.   I believe it's a bar, it's a defense against claims made under the FDCPA, if the debt collector has maintained reasonable policies and

procedures, and put them in place in order to prevent mistakes made in the collection of consumer debt.

Q.   And do you think that the calls at issue in this case to Ms. Fox were the result of a bona fide error?

A.   I don't believe necessarily that a mistake was made.  However, if a mistake was made, it would fall under the bona fide error defense.

MS. DEFRANCISCO:  Let's take a quick break.  I'm almost done.

(Recess 11:02 a.m. to 11:10 a.m.)

Q    (BY MS. DEFRANCISCO)  So I just want to ask a couple of questions, then I think I'm done.

The policies and procedures we've discussed today as far as oral notification of a wrong number, who designed those policies?

A.   It would be a partnership of myself and the administration at ProCollect.  John also might be included.

Q.   Okay.

A.   I don't -- I've got to give him some

credit.

Q. And I think I asked this, but you never really know until you see the transcript later. The policies and procedures we've talked about, those policies were followed here by the collectors in this particular case, to your knowledge?

A. I believe, to a large extent, they were. I think in a perfect world maybe the final call -- the final call that was on 6/8, I think perhaps in a perfect world the debt collector having the number in the hot box may not have called. But it was a different collector that we see that -- a different collector was -- picked up the account and independently wanted to verify. I mean, we're in the business of collecting debt, and so because the number still remained on the TLO report, independently verified it himself or herself. Other than that, I believe that the procedures were followed.

Q. And that collector wasn't disciplined or anything like that for making this phone call?

A. I don't know the answer to that.