# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

JENNIFER FOX                                                         PLAINTIFF

v.                                  NO. 4:17CV00634 JLH

PROCOLLECT, INC. and
DOES, 1-10, inclusive                                       DEFENDANTS

## OPINION AND ORDER

The issue in this case is whether a debt collector's two phone calls to a wrong number, after learning the number was not the debtor's, violates the Fair Debt Collection Practices Act.

Jennifer Fox sued ProCollect, Inc., for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Arkansas Fair Debt Collection Practices Act, Ark. Code Ann. § 17-24-501, *et seq*. She also asserted claims under the Arkansas Deceptive Trade Practices Act, which the Court previously dismissed. Document #10. ProCollect has now moved for summary judgment on Fox's remaining claims. Fox also filed a motion for summary judgment approximately three weeks after the Court's dispositive motions deadline. ProCollect moves to strike this late motion. For the reasons that follow, ProCollect's motion for summary judgment is granted. Fox's motion for summary judgment, and ProCollect's motion to strike, are denied as moot.

ProCollect sought to collect a debt from a debtor whose phone number ends in 9183.[1] Instead, ProCollect called Fox, whose phone number is one digit off, ending in 9182. ProCollect called Fox's number five times from July 1, 2016 to May 10, 2017. No one at ProCollect ever spoke with Fox on any of those calls.

---

[1] Unless otherwise noted, the facts are taken from the plaintiff's responses to the defendant's statement of material facts. Document #30-3.

On May 11, 2017, Fox called ProCollect and spoke with an individual there for the first time. She informed ProCollect it was calling a wrong number. One week later, on May 18, a ProCollect collector checked its internal system which showed the 9182 phone number as one associated with the debtor, Dale Gray. The collector then called Fox's number and left a voicemail for "Dale Gray." Document #24-4 at 5. That same day Fox again called ProCollect asking to have her number removed from ProCollect's calling list. She stated that she does not know anyone associated with "Dale Gray." She told the collector ProCollect had been calling her for two years at "weird a** crazy a** hours" and said "don't call me no f****** more." Document #30-3 at 3; *see also* Document #27 (voicemail recording). After this call, ProCollect placed a "DO NOT CALL" note next to the 9182 number in its internal system.

On June 8, a different collector at ProCollect checked its internal system which showed Fox's 9182 number as associated with the debtor. *See* Document #24-2 at 8. Despite the "DO NOT CALL" notation, that collector called Fox's number without leaving a message. Fox then called ProCollect and requested, for the third time, that her 9182 number be removed from ProCollect's system as a wrong number. ProCollect has not contacted Fox since that day, June 8, 2017.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986);

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

The Fair Debt Collection Practices Act generally protects consumers from abusive debt collection practices and protects ethical debt collectors from competitive disadvantage. *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1054 (8th Cir. 2002). Fox asserts violations of two sections of the Fair Debt Collection Practices Act: 15 U.S.C. § 1692d, which prohibits harassment or abuse, and 15 U.S.C. § 1692f, which prohibits unfair or unconscionable practices.[2] At this stage the fighting issue boils down to whether a reasonable jury could find that ProCollect intended to annoy, abuse, or harass when it placed two phone calls to Fox's number, several weeks apart, after being told twice that it was a wrong number.

---

[2]The relevant portions of the Arkansas Fair Debt Collection Practices Act mirror these two sections. *See* Ark. Code Ann. § 17-24-505, -507. The parties agree the FDCPA and AFDCPA claims should be treated the same for purposes of summary judgment. Document #30 at 14. The Court will thus analyze them together. *See Duhart v. LRAA Collections*, 652 F. App'x 483, 484 n.1 (8th Cir. 2016) (per curiam).

3

Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692d provides the following nonexhaustive list of conduct:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Fox contends that ProCollect violated subsection (5). Whether attempts to contact a debtor by telephone amounts to harassment or annoyance turns on evidence regarding the volume, frequency, pattern, or substance of the phone calls. *Kuntz v. Rodenburg LLP*, 838 F.3d 923, 926 (8th Cir. 2016). Although the answer may be fact-intensive, summary judgment is appropriate when the record establishes that no reasonable jury could find the requisite level of harassment. *Id.*

Eighth Circuit cases on this issue are scarce, and no clear consensus emerges from other federal courts on what conduct could reasonably give rise to an intent to annoy, abuse, or harass. Some courts have concluded that juries should generally decide the reasonableness of telephone calls. Others have held that even daily calls unaccompanied by egregious conduct do not raise a triable issue of fact. *See Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1230-31 (D. Kan. 2011) (collecting cases holding both). Courts generally agree, however, that a high volume of calls will rarely if ever make out a FDCPA violation on its own. As one district court observed,

> A remarkable volume of telephone calls is permissible under FDCPA jurisprudence. *See VanHorn v. Genpact Servs., LLC*, No. 09–1047–CV–S–GAF, 2011 WL 4565477, at *1 (W.D. Mo. Feb. 14, 2011) (finding 114 calls in a four-month period did not violate the FDCPA); *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (granting summary judgment in favor of a defendant who placed 149 telephone calls to the plaintiff during a two-month period); *Clingaman v. Certegy Payment Recovery Servs.*, No. H–10–2483, 2011 WL 2078629, at *5 (S.D. Tex. May 26, 2011) (granting summary judgment for a defendant who placed 55 phone calls over three and one-half months).

*Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F. Supp. 2d 694, 707 (D. Minn. 2012).

Many courts have granted summary judgment to debt collectors—holding no jury could find an intent to harass—while specifically noting that under the facts of the case the debt collector did *not* continue calling after being asked to stop. *E.g., Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment where although the number of calls was "somewhat high," the debt collector left a total of six messages, made no more than seven calls in a single day, did not call back on the same day as leaving a message, and was not asked to stop calling; and the evidence showed debt collector intended to reach the plaintiff's daughter rather the plaintiff); *Waite v. Fin. Recovery Servs., Inc.*, 2010 WL 5209350, at *4 (M.D. Fla. Dec. 16, 2010) (granting summary judgment where debt collector called plaintiff approximately once per day, not at inconvenient times, and left no more than six messages, and plaintiff never confirmed or disputed the debt or asked the collector to cease calling); *Katz v. Capital One*, 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010) (granting summary judgment where none of debt collector's calls were back to back, were made at inconvenient times, or occurred after plaintiff asked collector to stop calling). Because the court in each of these cases mentioned the debt collector had *not* called the plaintiff after it was asked to stop, these cases could be read to suggest that *had* the debt collector continued to call after being asked to stop the question of intent would have been for the jury.

5

Conversely, district courts have inferred an intent to harass where—among other things—a debt collector continuing calling the debtor after the debtor had asked not to be called. *E.g., Gilroy v. Ameriquest Mortg. Co.*, 632 F. Supp. 2d 132, 136 (D. N.H. 2009) (finding for plaintiff where she told the debt collector to stop calling her, that the calls were upsetting her, and that she did not have money to pay the debts; calls were placed late in the evening, and callers sometimes called her a "liar" on the phone); *Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp. 2d 96, 99-100 (D. Conn. 2005) (finding for plaintiff where debt collector repeatedly called him at work despite repeated requests to stop, called him a liar, and told the plaintiff's supervisor about the alleged debt). These cases tend to support Fox's argument that an intent to harass may arise when the facts include continued calls after the plaintiff has asked the debt collector to stop calling.

On the other hand, some courts have nevertheless granted summary judgment for a debt collector even where the collector continued to call a number after being asked to stop calling. In *VanHorn v. Genpact Services, LLC*, the debt collector called the plaintiff almost daily for a four-month period. 2011 WL 4565477, at *1 (W.D. Mo. 2011). It sometimes called late in the evening and sometimes up to six times within twenty-four hours. *Id.* In addition, the plaintiff orally requested the defendant to stop calling "multiple times," although the plaintiff did not identify himself on these occasions. *Id.* at *2. The defendant never received a cease-and-desist letter. *Id.*

The *VanHorn* court explained that when reading § 1692d in its entirety, absent egregious conduct or an intent to annoy, abuse, or harass, persistent calls in an attempt to reach a debtor do not violate the FDCPA. *Id.* at *3. The court surveyed various cases and ultimately concluded that no reasonable trier of fact could infer an intent to annoy, abuse, or harass because there was no egregious conduct such as calling back immediately after plaintiff hung up, calling him at work, or

making threatening, profane, or insulting statements. *Id.* at *4. Thus, the court granted summary judgment to the debt collector. *Id.*

Similarly, in *Saltzman v. I.C. System, Inc.*, the district court granted summary judgment to the debt collector. 2009 WL 3190359 (E.D. Mich. 2009). The debt collector placed between twenty and fifty calls to the plaintiff's residence in a one-month period, and the plaintiff requested the defendant to stop calling her. *Id.* at *7. She did not send a cease and desist letter, nor did she dispute the amount owed. *Id.* The district court held that the record evinced nothing "other than a legitimate, albeit persistent, effort to reach her." *Id.* Summary judgment was warranted. *Id.*; *see also Gnesin v. Am. Profit Recovery*, 2012 WL 5844686 (E.D. Mich. Nov. 19, 2012) (dismissing complaint where allegations consisted of a single phone call to plaintiff who did not owe the debt and who repeatedly told the debt collector that she could not speak at the moment, but the debt collector refused to stop talking, would not amicably terminate the call, and continued to improperly attempt to collect the debt).

In this case, Fox not only asked ProCollect to stop calling, but informed ProCollect the number was wrong. A few courts have considered calls to a wrong number.

Most important, perhaps, is the Eighth Circuit case in *Kuntz*. There, the debt collector called a provided phone number twelve times over a four-week period without a response. *Kuntz*, 838 F.3d at 924. The collector then called twice more after learning the phone number was not the debtor's but her father's, and one of the subsequent calls was a mistake. *Id.* at 924. The plaintiff argued on appeal that the debt collector's intent in making the calls was a disputed issue of fact precluding summary judgment. *Id.* at 926. However, the Eighth Circuit explained that the debt collector's

7

conduct did not rise to harassment as a matter of law, and it affirmed summary judgment for the debt collector. *Id.* at 926.

Other courts have held that fact issues precluded summary judgment in wrong-number § 1692d(5) cases. The District Court for the District of Kansas denied summary judgment in such a case. *Wright v. Enhanced Recovery Co., LLC*, 227 F. Supp. 3d 1207 (D. Kan. 2016). There, the debt collector's records listed an incorrect phone number as belonging to the debtor, and the debt collector called the wrong number twenty-one times. *Id.* at 1209. The parties disputed what transpired during the calls. The plaintiff testified that he informed the caller it was a wrong number more than a dozen times, asked not to be called again, and was told he would not be called again. *Id.* The debt collector, however, produced evidence that the plaintiff never spoke to a live representative in any of the calls. *Id.* at 1210. The district court analyzed whether a § 1692d(5) violation occurred, looking to the volume and pattern of the calls. *Id.* at 1213. Twenty-one calls alone was insufficient to give rise to liability; however, according to the court, evidence that the debt collector continued to call after being asked to stop would create an issue of fact as to intent to harass. *Id.* The court declined to take the debt collector's records as more accurate than the plaintiff's recollections, holding that an issue of material fact existed on whether the debt collector continued to call the plaintiff after being asked to stop. *Id.* at 1213-14.

The *Wright* court relied in part on an unpublished case from the Eleventh Circuit, *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230 (11th Cir. 2011) (per curiam). There, genuine issues of material fact existed as to whether the debt collector intended to annoy or harass the plaintiff. The plaintiff did not owe any of the debts that were the subject of the telephone calls; they belonged to her daughter and the family that previously owned the phone number. She received

8

about three-hundred calls over two-and-a-half years, sometimes up to three calls a day. She testified that she informed the callers she was not the debtor and asked them to stop calling approximately eight to ten times. The debt collector continued to call. *Id.* at 232.

In reversing summary judgment for the debt collector, the Eleventh Circuit considered the volume and frequency of the calls, the fact that the plaintiff suffered emotional stress from the calls, and that she informed the debt collector of its mistake almost three years before it stopped calling her. *Id.* at 233-34. The court noted that the debt collector's records indicated the plaintiff's phone number belonged to the actual debtors, and thus the debt collector may truly have been trying to reach the debtors with the phone calls. The court also recognized that after a debt collector is told a number is incorrect, it must be able to perform reasonable follow-up activities to ensure the number is incorrect. *Id.* at 234. It held, however, that there was a factual dispute as to whether the debt collector's follow-up activities were reasonable because the plaintiff told the debt collector it had a wrong number almost three years before it stopped calling, and the debt collector continued to call nonetheless, at least seventy more times. *Id.* at 234 & n.3. Thus, a reasonable jury could find an intent to harass "because [the debt collector] continued to call [the plaintiff] despite being on notice that she was not the debtor and that her phone number was not correct for [the debtors.]" *Id.* at 234-35.

This is far from an exhaustive survey of the relevant federal caselaw. All these cases illustrate, however, the variety in approaches that courts take at the summary judgment stage in determining whether conduct could give rise to an intent to annoy, harass, or abuse. One thing is clear. In each case cited above where the court held intent to harass could be inferred, the debt collector did more than simply continue to call or speak to the plaintiff after being asked to stop. The

9

parties have not pointed the Court to a case that turned on a debt collector's calls after such an oral cease request. Nor has the Court found a case where there was a triable issue as to intent based solely on phone calls after the plaintiff asked the debt collector to stop calling. Thus, although they are instructive, none of the cases discussed above is precisely on point.

For four main reasons, the Court holds that no reasonable jury could conclude that ProCollect's conduct gives rise to an intent to annoy, harass, or oppress.

The first and primary reason is the FDCPA section language itself. Courts must read § 1692d in its entirety to determine what constitutes harassment, oppression, or abuse. *See, e.g.*, *VanHorn*, 2011 WL 4565477, at *3 (citing *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455, 113 S. Ct. 2173, 2182, 124 L. Ed. 2d 402 (1993) ("Statutory construction is a holistic endeavor, and, at a minimum, must account for a statute's full text . . . and subject matter.")). The Court will consider all of § 1692d's prohibitions in determining whether a jury could conclude that ProCollect's conduct violates § 1692d(5).

Section 1692d prohibits as harassing conduct, among other things, the "use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." 15 U.S.C. § 1692d. It also holds up as examples of harassment using "obscene or profane language," publishing lists of debtors who refuse to pay their debts, advertising the sale of a debt in order to coerce payment, and placing calls without disclosing the caller's identity. *Id.* All this is fairly egregious conduct. *Vanhorn*, 2011 WL 4565477, at *3. *See also Davis v. Phelan Hallinan & Diamond PC*, 687 F. App'x 140, 145 (3d Cir. 2017) ("Although that list does not strictly limit the general application of the prohibition, it illustrates the level of culpability required to violate § 1692d."). Indeed, the Sixth Circuit has described the conduct in § 1692d as "tactics intended to

embarrass, upset, or frighten a debtor." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006).

Here, ProCollect called Fox's number five times in ten months without speaking to her. It then placed two phone calls, several weeks apart, to Fox's number after it had notice the number was wrong. In the first of these two calls, ProCollect left a message for a "Dale Gray." This use of the actual debtor's name strongly suggests the call was an unsuccessful attempt to reach him, not to harass Fox, Gray, or anyone else. *Compare Saltzman, Inc.*, 2009 WL 3190359, at *7 (noting that the high disparity between the number of calls placed and the number of successful conversations implies a "difficulty of reaching Plaintiff, rather than an intent to harass"). In the second call, ProCollect did not talk to Fox or leave any message. These actions are a far cry from the type of conduct Congress held up as harassment or abuse in § 1692d.

Second, another section of the FDCPA supports the conclusion that making two calls after being asked to stop does not give rise to an actionable violation. The Court "discerns a provision's meaning partly through the surrounding provisions." *See Gavilon Grain LLC v. Rice*, 2017 WL 3508721, at *3 (E.D. Ark. Aug. 16, 2017). Elsewhere within the FDCPA, Congress explicitly provided that a debt collector must cease further communication with a consumer, with a few exceptions, if the consumer "notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer." 15 U.S.C. § 1692c(c). Thus, a debt collector's refusal to stop communicating after a written cease request violates the FDCPA unless a statutory exception applies. *See, e.g.*, *Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 762-63 (8th Cir. 2018).

Congress chose to make communications after a *written* cease request a *per se* FDCPA violation. Although § 1692d's laundry list of harassing conduct is non-exhaustive, Congress could have made a debt collector's communications after an oral cease request a *per se* violation of § 1692d, but it did not.[3] The Court does not mean to imply—and does not hold—that a debt collector should not honor oral requests to stop calling. The Court's observation on this matter instead reflects an endeavor to examine the statute's full text holistically. *See U.S. Nat'l Bank*, 508 U.S. at 455, 113 S. Ct. at 2182. Accordingly, the statute's express prohibition of communications to a consumer after a *written* cease request—not just *any* cease request—implies that merely calling a phone number after an oral request to stop does not, in and of itself, violate § 1692d(5). *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300, 78 L. Ed. 2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)). Based on reading the statute in its entirety, the Court concludes that calling a number twice after oral cease requests does not give rise to an intent to annoy, abuse, or harass.

Third, prohibiting two phone calls after a debt collector is notified a number is incorrect would, practically speaking, hinder legitimate collection efforts. As ProCollect's corporate representative points out, "many alleged debtors frequently claim debts aren't theirs or allege wrong numbers to avoid collection." Document #24-1 at 2. Common sense dictates that a "debt collector

---

[3]Section 1692c(c)'s prohibition against communications after a written cease request by its terms applies to communications to *consumers* — persons obligated or allegedly obligated to pay a debt. 15 U.S.C. § 1692a(3). Whether or not Fox is a "consumer," the point is that Congress knows how prohibit communications after a written cease request, and could have similarly prohibited communications after an oral cease request. It chose not to do so.

must be able to perform reasonable follow-up activities to ensure that the number they possess is actually incorrect." *Meadows*, 414 F. App'x at 234. This is true especially considering the FDCPA is designed not only to protect consumers, but also to protect ethical debt collectors from competitive disadvantage. *Peters*, 277 F.3d at 1054.

Repeatedly calling a number despite being told that number is incorrect would at some point, perhaps, cross a line from merely intending to carry out legitimate collection efforts to intending to harass. But the Court does not draw that line in this case. In any event, the facts here do not give rise to such an intent. Even the courts that have denied summary judgment partly based on continued phone calls to a wrong number did so under more egregious facts than those present here. *Wright*, 227 F. Supp. 3d at 1209-13 (wrong number called twenty-one times, and the plaintiff informed the debt collector the number was wrong more than a dozen times); *Meadows*, 414 F. App'x at 230-32 (wrong number called three-hundred times over two-and-a-half years, sometimes up to three calls a day, and the plaintiff informed the debt collector the number was wrong eight to ten times, including almost three years before it stopped calling her). Here, ProCollect called Fox's number twice after she informed it, twice, the number was wrong. This record does not create an issue of fact for the jury. Absent other egregious conduct, ProCollect's actions did not violate § 1692d(5) as a matter of law.

Fourth, and finally, the Eighth Circuit's reasoning in *Kuntz* guides this Court. Recall that there the debt collector called a phone number twice after learning the number was wrong. *Kuntz*, 838 F.3d at 924. Only one of the subsequent calls was a mistake. *Id.* The Court affirmed summary judgment because, as a matter of law, this conduct was not harassment. *Id.* at 926. Here, ProCollect likewise called Fox's number twice after learning the number was wrong. If one of these calls were

13

a mistake, *Kuntz* would squarely mandate summary judgment. And even if the Court infers to Fox's benefit that neither of the two subsequent phone calls was a mistake, *Kuntz* still strongly supports the conclusion that intentionally placing two phone calls to a wrong number does not violate § 1692d(5) as a matter of law.

For all of the above reasons, the Court grants summary judgment to ProCollect on Fox's § 1692d(5) claim.[4]

The second FDCPA subsection at issue in this case is 15 U.S.C. § 1692f. This subsection prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." It lists eight examples of prohibited conduct. ProCollect argues that this subsection is the catchall for conduct not covered by other FDCPA provisions. It contends that because Fox asserts that § 1692d applies to the allegedly harassing phone calls, she cannot also bring a claim under § 1692f for the same conduct. In response to this issue on summary judgment, Fox argues that while § 1692d(5) addresses the conduct at issue in this case, "if the Court were to find that ProCollect's conduct falls outside the scope of 1692d and d(5), it should hold that the conduct violates section 1692f." Document #30 at 13-14.

---

[4]Fox also asserts that ProCollect violated the prefatory language to § 1692d, which broadly prohibits conduct the natural consequence of which is to harass, oppress, or abuse. ProCollect contends that when a complaint rests on phone calls to support a harassment claim, the plaintiff must rely on § 1692d(5) as any other interpretation would circumvent the intent element of § 1692d(5) and render it superfluous. On summary judgment, Fox has not meaningfully responded to this argument. The Court agrees that under the circumstances Fox has no separate claim for a violation of § 1692d's preface. *See, e.g.*, *Little v. Portfolio Recovery Assocs., LLC*, 2014 WL 1400660, at *1 n.1 (D. Kan. Apr. 10, 2014) (citing cases holding that to permit a separate action under § 1692d when the only alleged harassment is telephone calls would eviscerate § 1692d(5)'s intent requirement and render the section superfluous).

ProCollect cites *Baker v. Allstate Fin. Servs., Inc.*, where the district court held that because other FDCPA provisions addressed the type of conduct at issue — improper disclosures and false threats of legal action — § 1692f, the catchall provision, did not apply. 554 F. Supp. 2d 945, 953 (D. Minn. 2008) (citing cases holding same). The district court held likewise in *Scott v. Portfolio Recovery Assocs., LLC*, where it granted summary judgment on a § 1692f claim. 139 F. Supp. 3d 956, 970 (S.D. Iowa 2015). It summarized in relevant part:

> Portfolio argues that Plaintiff's § 1692f claim fails as a matter of law because the alleged misconduct underlying Plaintiff's § 1692f claim is no different than the misconduct underlying Plaintiff's § 1692c(b) and § 1692e claims. In the context of this case, the Court must agree. Plaintiff alleges that Portfolio violated § 1692f by garnishing Plaintiff's wages without the legal right to do so. As Plaintiff has claimed, and as the Court has already determined, garnishing a consumer's wages without authorization conduct falls under § 1692e(5). Yet for that very reason, Plaintiff cannot simultaneously maintain a claim under § 1692f for the same conduct.

*Id. See also Taylor v. Heath W. Williams, LLC*, 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007) (dismissing § 1692f claim where complaint did not identify any misconduct beyond that which the plaintiff asserted violated other provisions of the FDCPA). The Court is inclined to agree that Fox's § 1692f claim fails because it rests on the same alleged misconduct that she asserted violated § 1692d(5).

Even if the Court considers Fox's § 1692f claim independently, however, it fails on the merits. ProCollect's conduct, as presented in the record and as set forth above, does not amount to unfair or unconscionable conduct. *See Miljkovic v. Shafritz & Dinkin, PA*, 791 F.3d 1291, 1308 (11th Cir. 2015) (defining "unfair" as "marked by injustice, partiality, or deception," and "unconscionable" as "shockingly unfair or unjust"); *see also Black's Law Dictionary* 1664 (9th ed. 2009) (defining unconscionable as "showing no regard for conscience; affronting the sense of justice, decency, or reasonableness").

15

For all of the foregoing reasons, the Court grants summary judgment in favor of ProCollect on all of Fox's claims against ProCollect. Her claims against Does 1-10, who have not been identified, are dismissed without prejudice.

ProCollect's motion for summary judgment is granted. Document #24. Fox's cross motion is denied as moot. Document #30. ProCollect's motion to strike is denied as moot. Document #32.

IT IS SO ORDERED this 30th day of January, 2019.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE